**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TAMMY LYNN SAUNDERS**, | : | |
| | : | |
| *Plaintiff* | : | Case No.  19-cv-03458-JMY |
| | : | |
| v. | : | |
| | : | |
| **SOUTHEASTERN HOME** | : | |
| **HEALTH SERVICES OF PA, LLC,** | : | |
| | : | |
| *Defendant* | : | |

<u>**MEMORANDUM**</u>

**YOUNGE, J.**                                                                              **MARCH 31, 2021**

   Plaintiff Tammy Lynn Saunders brings the above-captioned employment discrimination action against her former employer, Defendant Southeastern Home Health Services of PA, LLC (hereinafter, "Southeastern"), alleging Southeastern discriminated against her on the basis of her race in violation of the 42 U.S.C. § 1981.  Now before the Court is Southeastern's Motion for Summary Judgment.  ("MSJ," ECF No. 24.)  The Court has considered the submissions made in support of and in opposition to the pending motion and finds this matter appropriate for resolution without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons that follow, Southeastern's Motion will be granted.

   **I.**   **BACKGROUND**[1]

---

[1] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system, which does not always match the document's internal pagination.  Further, unless indicated otherwise or where attributed to one party or another, the facts recited herein are undisputed.  To the extent any of the facts are disputed, the Court concludes they are not material to the disposition of the pending motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections—unless discussed herein.  As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on any disputed evidence.

Plaintiff, a Caucasian, was hired by Compassionate Home Care in November 2009. ("Plf. SUMF," ECF No. 31-1 ¶ 2; "Def. SUMF," ECF No. 26 ¶ 1.)  In 2011, Compassionate Home Care was acquired by Southeastern.  (Plf. SUMF ¶ 2.)  At the time of the acquisition, Plaintiff was employed as a Nurse Manager.  (Plf. SUMF ¶ 3.)  By December 2014, Plaintiff was promoted to the position of Branch Director.  (*Id.* ¶ 10; *see also* Def. SUMF ¶ 3.)  Plaintiff maintains that she received "glowing accolades and emails from [Southeastern's CEO, Mr. George Pinel,] praising her work."  (Plf. SUMF ¶ 24; Tammy Saunders Affidavit, ECF No. 31-2 ¶ 25.)  "However, on [January] 17, 2019, when Plaintiff actually had an appointment with the CEO to discuss a new bonus program for 2019, Plaintiff arrived after an almost two-hour drive to be swiftly told that [she] was being let go" and that "they were taking the company in a different direction."  (Plf. SUMF ¶¶ 25-26; Def. SUMF ¶ 10.)

Plaintiff maintains that Ms. Candace Douglas RN, "was promoted to Director [of Operations-West Region (DOWR)] over seven branches after Plaintiff was fired without cause." (*Id.* ¶ 30.)  Ms. Douglas, who is an African American, was previously employed with Southeastern since 2008 as an Adult Intermittent Services Nurse Manager.  (Plf. SUMF ¶ 31; Def. SUMF ¶¶ 5-6; ECF No. 24-3 at 2.)  According to Plaintiff, Ms. Douglas' work attendance was "poor," she engaged "in fraudulent activity under Federal entitlement programs," she was "stagnant in her role" as a nurse manager, and had difficulty implementing many of Southeastern's programs.  (Plf. SUMF ¶¶ 33, 36-37.)  Thus, Plaintiff believes that Southeastern "subjected her to reverse race discrimination when it terminated her employment and gave her duties to [Ms.] Douglas, who was far less qualified than she."  (Opp. at 1.)

Southeastern maintains that in 2018, "the branches [Plaintiff] managed had a significant decline in revenue, which caused her to miss budget by nearly $500,000."  (George Pinel

Affidavit, ECF No. 35-1 ¶ 10.)  Southeastern's CEO "repeatedly communicated to [Plaintiff his] concern and disappointment with her as a Branch Director for failure to meet the budget established for her branches, the extensive turnover of the employees she managed, and her inability to satisfactorily accept patient referrals."  (*Id*. ¶ 16.)  Southeastern also asserts that in 2018, the CEO "made the decision for a corporate reorganization and reduction in force" which "resulted in the elimination of Southeastern's Branch Manager positions."  (Def. SUMF ¶¶ 8-9.) Accordingl to Southeastern, "[u]pon implementation of the corporate reorganization and [reduction in force], Ms. Douglas was offered the newly created position of Director of Operations-West Region."  (*Id*. ¶ 11.)  Southeastern asserts that Ms. Douglas' new position requires her to manage seven branches, and that prior to the reduction in force, Ms. Douglas "served in management positions, which included that of a Branch Manager and an interim-Branch Director where she managed four offices."  (Pinel Aff. ¶¶ 18, 19.)  Ultimately, Southeastern maintains that "Ms. Douglas was not selected because of her race."  (*Id*. ¶ 21.)

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on July 31, 2019.  ("Compl.," ECF No. 1.)  The Complaint sets forth one claim for reverse race discrimination, asserting that Southeastern violated 42 U.S.C. § 1981 by "firing her and appointing a less qualified, less experienced African American in her stead."  (*Id*. ¶ 1.)  On October 2, 2019, Southeastern filed its Answer denying all liability.  (ECF No. 4.)

On July 8, 2020, Southeastern filed its motion for summary judgment.  On August 7, 2020, Plaintiff filed an Opposition to Southeastern's Motion ("Opp.," ECF No. 31), and on August 14, 2020, Southeastern filed a Reply thereto ("Reply," ECF No. 34).  Also on August 14, 2020, Southeastern filed a motion to strike in response to Plaintiff's response to Southeastern's

statement of undisputed material facts as well as Plaintiff's counterstatement of undisputed material facts ("Strike Mtn.," ECF No. 33).

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment where the movant shows that there is "no genuine dispute as to any material fact". Fed. R. Civ. P. 56(c). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996). The burden of proof rests originally with the movant to show the lack of dispute as to a material fact and must do so by citing to specific portions of the record which demonstrate the movant's entitlement to judgment under Rule 56. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To determine whether a movant has demonstrated that there are no genuine issues of material fact, a court must first consider the evidence presented by the moving party and draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

For claims or defenses where the movant bears the burden of proof at trial, a movant "must show that it has produced enough evidence to support the findings of fact necessary to win." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 237 (3d Cir. 2007). For claims or defenses that the non-movant bears the burden of proof at trial, a movant can simply point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant has met its burden of proof under summary judgment, the opposing party "must point to actual evidence in the record on which a jury could decide an issue of fact its way." *El*, 479 F.3d at 238.

In order to survive summary judgment, the party opposing summary judgment must raise "more than a mere scintilla of evidence in its favor." *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). The party opposing summary judgment must cite specific evidence in the record and may not "rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (describing this phase of summary judgment as "put up or shut up time for the non-moving party"). Reliance upon "conclusory, self-serving affidavits [is] insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009); *see also Betts v. New Castle Dev. Ctr.,* 621 F.3d 249, 252 (2010). In deciding a motion for summary judgment, the court is limited to determining if there is a genuine issue as to a material fact requiring resolution by the finder of fact at trial. *See Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). The court does not weigh evidence or determine the truth in deciding if summary judgment is warranted. *Id.*

## IV.   DISCUSSION

### A.   Reverse Race Discrimination Claim

Plaintiff contends that Southeastern's decision to "fire[] her" and "appoint[] a less qualified, less experienced African American in her stead" was motivated by race discrimination in violation of 42 U.S.C. § 1981. (*See* Compl. ¶ 1; Opp. at 1.)[2] Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981.

---

[2] In *McDonald v. Santa Fe Trail*, 427 U.S. 273, 286–96 (1976), the Supreme Court held that the federal civil rights statutes afford white plaintiffs a federal remedy for race discrimination in employment.

To sustain a § 1981 discrimination claim, a plaintiff must show that the defendant intentionally discriminated against him or her because of race in the making, performance, enforcement, or termination of a contract or for such reason denied him or her the benefits, terms, or conditions of the contractual relationship. *See St. Francis College v. Al-Khazraji*, 481 U.S. 604, 609 (1987); *see also Pamintuan v. Nanticoke Mem. Hosp.*, 192 F.3d 378, 385 (3d Cir. 1999) ("Section 1981 prohibits 'racial' discrimination in the making of private and public contracts."). Similarly, Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . ." 42 U.S.C. § 2000e-2(a)(1); *see also Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 499 (3d Cir. 1999) (elements of employment discrimination under § 1981 are the same as those for a Title VII claim).

A plaintiff can sustain such a claim by presenting direct evidence of discrimination, *i.e.*, overt or explicit evidence which directly reflects a discriminatory bias by a decisionmaker. *See Arbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994). Absent direct evidence of discrimination, a plaintiff may prove her claim "by applying the familiar *McDonnell Douglas* burden-shifting framework." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under this framework, the plaintiff must first establish a prima facie case of discrimination. *Id*. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant "to provide a legitimate non-retaliatory reason for its conduct." *Id*. Finally, if the defendant articulates a nondiscriminatory reason for its adverse actions, the burden shifts back to the plaintiff to show that the employer's proffered explanation is pretextual. *See id*. The Court will first analyze

Plaintiff's arguments as to direct evidence of discrimination, and will then analyze her claim

under the *McDonnell Douglas* framework.

### B.  Plaintiff Has Failed to Show Direct Evidence of Discrimination

Plaintiff argues that she can overcome summary judgment by direct evidence by pointing

to two disputed comments made by Southeastern's CEO.  First, Plaintiff asserts that Ms.

Bernadette Fox RN, one of Southeastern's nurse managers, was told by Southeastern's CEO in

response to Plaintiff's termination that "the Company was vulnerable because it has no

minorities in any management position and it also needed someone in that position who will do

whatever he needs them to do."  (Opp. at 8; Saunders Aff. ¶¶ 29-31; Pinel Affi. ¶ 17.)  This

statement is hearsay within hearsay, and the Court will not consider it when determining this

motion.  *See Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) (ruling that hearsay

statements "that would be inadmissible at trial may not be considered for purposes of summary

judgment.").  Nevertheless, the Court does not see how the CEO's statement constitutes overt

evidence sufficient to show Southeastern had a discriminatory animus when in fact it was

Southeastern's Regional Vice President who made the decision to offer the position of Director

of Operations to Ms. Douglas.  Thus, this statement does not satisfy the high bar required to

establish direct evidence of discrimination.  *See Ezold v. Wolf, Block, Schorr and Solis-Cohen*,

983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers

unrelated to the decision process are rarely given great weight, particularly if they were made

temporally remote from the date of the decision.") (citing *Price Waterhouse v. Hopkins*, 490 U.S.

228, 277 (1989).  Second, Plaintiff asserts that the CEO confided in Stacey Sprecher, a former

employee of Southeastern, when he expressed "his concern about minorities, and how much

stress their employment caused him when they had to be terminated."  (Opp. at 8; Stacey

Sprecher Affidavit, ECF No. 31-3 ¶ 4.; Pinel Aff. ¶ 23.)  The Court does not see how this alleged

statement has any bearing on the issues in this case, particularly how it is related or connected to

Southeastern's decision to conduct a corporate reorganization and terminate Plaintiff's position.

*See Ezold*, 983 F.2d at 509.  Accordingly, Plaintiff has failed to show direct evidence of reverse

race discrimination.

### C.  Plaintiff Cannot Make A Prima Facie Showing of Discrimination

As our Court of Appeals has explained, a plaintiff must meet his or her initial burden of

establishing a prima facie case of employment discrimination by showing that: "(1) he[/she] is a

member of a protected class, (2) he[/she] is qualified for his [or her] position, (3) he[/she]

suffered an adverse employment action, and (4) the adverse employment action gave rise to an

inference of unlawful discrimination."  *Durst v. City of Phila.*, 798 F. App'x 710, 713 (3d Cir.

2020) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999)).[3]  "To establish a

prima facie case at summary judgment, 'the evidence must be sufficient to convince a reasonable

factfinder to find all of the elements of [the] prima facie case.'"  *Burton v. Teleflex Inc.*, 707 F.3d

417, 426 (3d Cir. 2013) (quoting *Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001)).

Here, Southeastern argues that Plaintiff has failed to establish the fourth element of her

prima facie case.[4]  Where an employee is terminated during a reduction in force, the fourth

---

[3] The Court recognizes that it is more difficult to show an inference of race discrimination when the decision to terminate a plaintiff is made by someone who is a member of the same race, as what happened in the instant matter.  "While this does not per se foreclose a claim of discrimination, it certainly does not help to sustain plaintiff's claim."  *See Burch v. WDAS AM/FM Inc.*, No. 00-4852, 2002 WL 1471703, at *7 (E.D. Pa. June 28, 2002); *see also Dungee v. Northeast Foods, Inc.*, 940 F. Supp. 682 n.3 (D.N.J. 1996) (that decisionmaker is member of plaintiff's protected class "weakens any possible inference of discrimination").

[4] Southeastern also argues that Plaintiff was not qualified for the Direct of Operations position. (MSJ at 7.)  This Court disagrees and finds that Plaintiff has submitted sufficient evidence demonstrating that she was qualified for the position—accordingly, Plaintiff has established the second element of her prima facie case.  (*See* Opp. at 11 (Plaintiff "was never written up, disciplined, suspended, or reproved. Defendant's CEO told her personally that he had never given high marks to any other Director in all of his years of doing appraisals and she received numerous accolades[.]"); *see also* Saunders Aff. ¶¶ 20-25.)

element of the prima facie case becomes whether the employer retained employees who do not belong to the protected class.  *See Showalter v. Univ. of Pitts. Med. Ctr.*, 190 F.3d 231, 234-35 (3d Cir. 1999).  "[A]s part of the fourth element, the plaintiff must identify retained employees who were 'similarly situated' to the plaintiff, that is, they worked in the same area and in approximately the same position."  *Smith v. Thomas Jefferson Univ.*, No. 05-2834, 2006 WL 1887984, at *3 (E.D. Pa. June 29, 2006) (citing *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 249-50 (3d Cir. 2002) (outlining requirements for prima facie case in a reduction in force matter)); *see also Roscoe v. Watco Companies, LLC*, No. 15-2118, 2016 WL 7380704, at * 6 (E.D. Pa. Dec. 19, 2016) ("[T]o be similarly situated for the purposes of § 1981 claims, Plaintiff and his comparator(s) must be 'similar in all relevant respects." The relevant respects "are determined by the context of each case, but often includes a 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'") (quoting *Opstanik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009)).

It appears that Plaintiff alleges that she was treated less favorably than similarly situated Southeastern employees, with specific reference to Ms. Douglas.  (*See generally* Opp.) Specifically, Plaintiff claims that Ms. Douglas was wrongfully considered for and elevated to the Director of Operations position, given that, in Plaintiff's eyes, Ms. Douglas, "for the duration of her career with [Southeastern], had been nothing more than a lowly branch manager."  (*Id*. at 2.) However, in this Court's view, Plaintiff fails to allege the facts necessary for this Court to consider that Ms. Douglas was "similarly situated" to the Plaintiff.  First, Ms. Douglas is not a suitable comparator because she held a different position from Plaintiff.  (Def. SUMF ¶ 7).

Furthermore, no facts exist to show that the two individuals had the same supervisor, were subject to the same work standards, or that they engaged in similar conduct without differentiating or mitigating circumstances to distinguish Southeastern's treatment of them. Ultimately, Plaintiff fails to adduce sufficient evidence for this Court to find that Ms. Douglas, the named comparator, was similarly situated, let alone treated more favorably.

Accordingly, because Plaintiff cannot establish her prima facie claim of reverse race discrimination, Southeastern is entitled to summary judgment.  *See Burton*, 707 F.3d at 426 ("If a plaintiff fails to raise a genuine dispute of material fact as to any of the elements of the prima facie case, she has not met her burden, and summary judgment is properly granted for the defendant.") (citing *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir. 1996)).

### D.  The Record Establishes the Existence of a Legitimate Non-Discriminatory Reason for Southeastern's Conduct

Even if Plaintiff was able to point to the undisputed factual record and establish a prima facie claim of race-based employment discrimination, the Court agrees with Southeastern that from that same record there can be no dispute that Southeastern had a legitimate non-discriminatory reason for Plaintiff's termination.  *See Tomaszewski v. City of Phila.*, 460 F. Supp. 3d 577, 593 (E.D. Pa. 2020) ("If the plaintiff establishes a prima facie case, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action.").

With regard to Plaintiff's termination, the undisputed factual record shows that Southeastern had a legitimate business reason for this action: "to reorganize its workforce to better manage its business operations."  (MSJ at 1; *see also* Pinel Aff. ¶ 12 ("I made the decision for a corporate reorganization and reduction in force, which caused Ms. Saunders' employment to end[."])  Thus, the Court concludes that Southeastern has met its light burden of articulating a

facially legitimate, nondiscriminatory reason for Plaintiff's termination, namely that a corporate reorganization, including a reduction in force, made Plaintiff's position no longer necessary to the ongoing operations of Southeastern.

### E. Plaintiff Has Failed to Adduce Sufficient Evidence for a Reasonable Fact Finder to Determine that Southeastern's Proffered Reason for Plaintiff's Termination was Pretext for Unlawful Retaliation

As noted *supra*, once a defendant answers a plaintiff's prima facie case with legitimate, non-discriminatory reasons for its actions, the plaintiff must point to "some evidence from which a factfinder could reasonably conclude that the defendant's proffered reasons were fabricated (pretextual)," and therefore a ruse for discrimination. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Proving pretext "places a difficult burden on the plaintiff." *Id.* at 765. To survive summary judgment, a plaintiff may "put forward 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Kautz v. Met–Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (quoting *Fuentes*, 32 F.3d at 765). A plaintiff may also point to "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Iadimarco v. Runyon*, 190 F.3d 151, 165-66 (3d Cir. 1999).

Here, Plaintiff contends that Southeastern's reduction in force "'justification' has to be pretextual" and that the "termination of a Caucasian Plaintiff and the concomitant promotion of a far less qualified African American, is certainly a different direction, but it can hardly be described under the circumstances as legitimate." (Opp. at 14.) To support this argument

11

Plaintiff first asserts that "promoting [Ms.] Douglas is plainly and obviously wrong.  She has never been a Director. . . She could not manage more than one branch and when she tried to manage two, one branch failed."  (*Id*. at 14; *see also* Saunders Aff. ¶¶ 33-34.)  Plaintiff further asserts that "the decision to promote [Ms. Douglas] is so plainly wrong, and so inexplicable, most especially when her mediocrity is compared to the excellence of the Plaintiff[.]"  (*Id*. at 14.)  In response, Southeastern contends that "Plaintiff is merely attacking Southeastern's business judgment in implementing its corporate reorganization, and concomitantly, the selection of Ms. Douglas to become the DOWR."  (MSJ at 13.)

This Court agrees with Southeastern.  Our Court of Appeals instructs that "pretext is not shown by evidence that 'the employer's decision was [plainly] wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.'"  *Kautz*, 412 F.3d at 467 (citing *Fuentes*, 32 F.3d at 765).  "In addition, a court does not sit as a super-personnel department that reexamines an entity's business decisions."  *Smith,* at *5 (citing *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1109 (3d Cir. 1997) ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination.")).  Thus, the Court concludes that Plaintiff has not demonstrated sufficient weaknesses, implausibilities, or incoherencies in Southeastern's proffered nondiscriminatory rationale for Plaintiff's termination to create a genuine issue of material fact.

Plaintiff also argues that certain disputed comments and statements made by Southeastern's CEO and COO about minorities suggest that the environment, in which the decision to eliminate her position and create a new position that was not offered to her, was a discriminatory one, at least with regards to reverse racism, and that Southeastern's proffered

12

reasons for terminating Plaintiff are a disguise for racial animus.  Plaintiff first points to the comments allegedly made by the CEO that Southeastern was vulnerable because it had no minorities in any management position, and that minorities caused him stress when they had to be terminated.  (*See* Opp. at 13.)  Second, Plaintiff points to one comment allegedly made by the COO that Southeastern needed "more blacks around here."  (*Id*; *see also* Saunders Aff. ¶ 36 (The COO "not only rapped lyrics of African American rappers in my presence as monthly meetings but also specifically stated to me that "we need more blacks around here."); see also William Giamarutti Affidavit, ECF No. 35-4 ¶¶ 2-3.)  Plaintiff's contention and disputed factual assertions are insufficient to prove pretext.  The Court finds that these isolated comments, that were allegedly uttered by one person involved in the decision to terminate Plaintiff and one person wholly uninvolved in the termination decision, that were not addressed towards Plaintiff or concerned Plaintiff, and that were not derogatory towards members of her race, does not cast enough doubt upon the rationale advanced by Southeastern as the legitimate reason for its decision to institute a reduction in force and terminate Plaintiff to create a genuine issue of material fact as to Southeastern's motivations.  *See Hook v. Ernst & Young*, 28 F.3d 366, 375-76 (3d Cir. 1994) (stating that offensive remarks, which were made by a decisionmaker during conversations that "had nothing to do with" the plaintiff's job, were insufficient to show an adverse decision was tainted by bias).

In summary, the Court finds that Plaintiff has not submitted sufficient evidence to create a genuine issue of material fact regarding whether Southeastern's proffered reason for the reduction in force and her termination were pretextual.

V.      **CONCLUSION**

For the reasons discussed above, the Court will grant Southeastern's Motion for

Summary Judgment.  An appropriate Order will follow.

**IT IS SO ORDERED.**

BY THE COURT:


 /s/ John Milton Younge
**Judge John Milton Younge**

14